PER CURIAM.
Pursuant to a complaint filed by The Florida Bar against Irving M. Weiss, this Court appointed a referee who held a hearing and made the following report.
I. Summary of Proceedings: Pursuant to the undersigned having been duly appointed as Referee to conduct disciplinary proceedings herein according to article XI, of the Integration Rule of The Florida Bar, a final hearing was held on September 5, 1980.
The following attorneys appeared as Counsel for the parties: For The Florida Bar, Harris K. Solomon; For the Respondent, Pro se.
II. Finding of Fact as to Each Item of Misconduct of which Respondent is charged: After considering all the pleadings and evidence before me, I find:
1) The Respondent, Irving M. Weiss is and at all times hereinafter mentioned was a member of The Florida Bar subject to the jurisdiction and disciplinary rules of the Supreme Court of Florida.
COUNT I
2) Respondent was employed by Mr. Craig M. Spengler to represent him in two separate matters.
3) In the first instance, Mr. Spengler employed the Respondent to prepare two contracts.
4) The information relative to drawing the contracts was delivered to the Respondent during April, 1978.
5) Respondent promised delivery of the completed contracts by July 1, 1978.
6) The contracts were not prepared on the promised date.
*1365 7) Mr. Spengler picked up his files from Respondent on August 17, 1978 at which time the contracts still had not been completed.
8) As a result of the contracts not being prepared, Mr. Spengler had to forego a lucrative business opportunity.
9) During this same period, on or about May 26, 1978, Mr. Spengler employed the Respondent to file suit in Small Claims Court, the Respondent was paid a $50.00 retainer at this time.
10) In the following months, Mr. Spengler called the Respondent several times, and was informed by the Respondent that the action was filed.
11) On or about August 15, 1978, Mr. Spengler ascertained by checking with the Clerk of the Court that the Respondent had never filed suit on his behalf.
COUNT II
12) In or about January, 1978, the Respondent was employed by Mr. Glenn Wade, President of American Collection Services to effectuate the collection of certain debts.
13) The Respondent received the collection files and their filing fees in two separate groups.
14) The first group of files, approximately 45, were filed and the majority reduced to judgment.
15) Out of the first group, the Respondent has failed to inform Mr. Wade of the status of 18 files.
16) The second group of files, approximately 50, along with filing fees were delivered by the Respondent to the Clerk’s office but were not filed as a result of some minor problem.
17) After bring informed of the problem the Respondent took no action but left the files at the Clerk's office for approximately three months before retrieving them.
18) After retrieving the files, Respondent took no action for an additional four months.
19) In or about August, 1978, after inquiry to the Clerk of the Court, Mr. Wade was informed that none of the second group of cases had been filed.
20) Upon learning that none of the second group of cases had been filed, Mr. Wade secured the return of his files and filing fees from the Respondent, and employed another attorney to handle the files.
COUNT III
21) Respondent received approximately Forty-Four Thousand Eight Hundred Thirty and 00/100 ($44,830.00) from the sale of an asset of Lloyd B. Kruft, now deceased.
22) Respondent deposited those funds in First Federal Savings and Loan Association of Broward County, Account Number 4-95184-5-9.
23) When Respondent withdrew those funds, the principal and interest amounted to approximately Forty-Eight Thousand and 00/100 Dollars ($48,000.00).
24) Respondent expended all of the funds.
25) Respondent did not expend the funds for the purpose authorized by either of the co-personal representatives of the Estate of Lloyd B. Kruft.
26) The Estate of Lloyd B. Kruft did not receive any beneficial interest from the expenditure of the funds.
27) Respondent has repaid $40,000 of the current debt plus interest and attorney’s fees to his client. Respondent still owes the estate approximately $15,000.00.
COUNT IV
28) Mrs. Frances Dorough retained Respondent to represent her in a friendly foreclosure action against Mr. Richard Naugle.
29) One year later, Respondent had still not completed the foreclosure.
30) Mrs. Dorough and Mr. Naugle agreed to terminate the proceeding and Mr. Naugle agreed to pay the purchase price plus interest.
*1366 31) On or about August 24, 1978, Mr. Naugle or his attorney delivered a check in the amount of Twenty Nine Thousand Eight Hundred Ninety-Three and .63/100 ($29,893.63) to Respondent and payable to Respondent’s trust account.
32) Between August 24,1978 and October 31, 1978, Mrs. Dorough repeatedly asked Respondent if he received any money in her behalf.
33) Respondent told Mrs. Dorough the deal was not yet closed.
34) On October 31, 1978, Mrs. Dorough spoke to Mr. Naugle and learned that Respondent had received the $29,893.63 in August.
35) Mrs. Dorough then went to Respondent and asked him to give her the money he was supposed to be holding in trust for her.
36) Respondent told her he did not have the money but he would go to New York and get it.
37) Respondent subsequently gave Mrs. Dorough two checks in the amounts of Seven Hundred Forty-Six and .63/100 Dollars ($746.63) and Twenty Eight Thousand and 00/100 ($28,000.00).
38) The check for $28,000.00 was drawn on a West Indies bank and was returned for insufficient funds six weeks later.
39) On December 29, 1978, Respondent gave Mrs. Dorough a check drawn on a local bank in the amount of $28,000.00. This check was cashed by Mrs. Dorough.

III.Recommendation as to Whether or not the Respondent should be Found Guilty:

COUNT I
I recommend that Respondent be found guilty of violating Florida Bar Code of Professional Responsibility D.R. 1-102(A)(4), 6-101(A)(3), 7-101(A)(2) and (3).
COUNT II
I recommend that Respondent be found guilty of violating Florida Bar Code of Professional Responsibility D.R. 6-101(A)(3), 7-101(A)(2) and (3), and 9-102(B)(1) and (4).
COUNT III
I recommend that Respondent be found guilty of violating Florida Bar Code of Professional Responsibility D.R. 7-101(A) and 9-102(B).
COUNT IV
I recommend that Respondent be found guilty of violating Florida Bar Code of Professional Responsibility D.R. 9-102(B) and Florida Bar Integration Rule, article XI, Rule 11.02(4).
IV. Recommendation as to Disciplinary Measures to be Applied:
Based on the above findings of fact, I recommend that Respondent be disbarred from The Florida Bar.
1) However in light of the circumstances enumerated below, I recommend that Respondent’s three year minimum period of disbarment begin to run from September 20, 1979, the effective date of the Supreme Court of Florida’s order temporarily suspending Respondent.
2) I found the following circumstances sufficiently extenuating to recommend that Respondent be given credit, toward the three year minimum period of disbarment, for the year he has been temporarily suspended:
a) Respondent has fully cooperated with The Florida Bar’s investigation and prosecution of these complaints.
b) Respondent was candid with the referee at the final hearing and appeared contrite due to his misconduct.
c) Respondent stated that he has eliminated the drug dependency problem that he has had for several years.
V. Personal History and Past Disciplinary Record:
After the finding of guilty and prior to recommending discipline to be recommended pursuant to Rule 11.06(9)(a)(4), I considered the following personal history and prior disciplinary record of the Re *1367 spondent, to wit: date admitted to Bar: May, 1974; prior disciplinary convictions and disciplinary measures imposed therein: none; other personal data: none.
We approve and adopt the findings and recommendations of the referee. Respondent is hereby disbarred from practicing law in the State of Florida, effective retroactively to September 20, 1979. Respondent is directed to pay the costs of these proceedings in the amount of $2,937.58.
It is so ordered.
BOYD, Acting C. J., and OVERTON, ENGLAND, ALDERMAN and MCDONALD, JJ., concur.